IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ANGELA MICHELLE TORRES,

       Plaintiff,

vs.                            No. CIV 2:13-402 RB/CEG

THE UNITED STATES OF AMERICA,
d/b/a BEN ARCHER HEALTH CENTER,

       Defendant.

**MEMORANDUM OPINION AND ORDER**

Plaintiff Angela Michelle Torres' tooth abscessed for want of a root canal.  Ms. Torres filed a complaint alleging that her dentist, an employee at the federally-operated Ben Archer Health Center, committed malpractice by failing to ensure that she received the root canal and both parties filed motions for summary judgment.  The United States moved to dismiss the case. Having reviewed the parties' arguments and evidence, the Court hereby **DENIES** the United States' Motion to Dismiss (Doc. 73), **GRANTS** in part and **DENIES** in part the United States' Motion for Summary Judgment (Doc. 73), and **GRANTS** Plaintiff's Motion for Summary Judgment.  (Doc. 67.)

I.      **BACKGROUND**

In 2003, Plaintiff became a patient at the Ben Archer Health Center ("Ben Archer") in Alamogordo, New Mexico.  (Pretrial Order, Doc. 84 ¶ 1.)  Primarily, she went to Ben Archer for emergency dental care.  (Puckett Depo., Ex. 4, Def.'s Mot. Summ. J., Doc 73-4 at 101:8-16.)  On August 15, 2006, Ms. Torres went to Ben Archer for emergency dental treatment related to an infected tooth.  (Def.'s Mot. Summ. J., Doc. 73 at 3.)  Dentist Charles Ray Puckett, D.D.S.

performed a pulpotomy on Ms. Torres' left upper first bicuspid ("tooth #12").  (Doc. 84 ¶ 8; Pl.'s

Mot. Summ. J., Doc. 68 at 1.)  A pulpotomy is a temporary procedure to clean and protect nerve

tissue until a root canal can be performed.  (Doc. 68 at 1-2.)  If a root canal is not conducted, a

tooth with a pulpotomy will eventually become infected.  (Doc. 68 at 2.)  Plaintiff never got a

root canal.

The parties dispute whether Dr. Puckett fully advised Plaintiff that she needed to get a

root canal.  The United States claims Dr. Puckett gave Plaintiff a written referral before she left

the office.  (Doc. 73-4 at 80:6-81:15.)  Plaintiff does not recall Dr. Puckett advising her to get a

root canal or referring her to another dentist for the procedure.  (Pl.'s Depo., Ex. 10, Pl.'s Reply,

Doc. 77-10 at 59:7-60:10.)  Plaintiff's dental chart contains a referral for a root canal with

endodontist Dr. Edward Kaminsky in Las Cruces, New Mexico.  (Doc. 73 at 3.)  But the dental

record is not flawless.  The dental record does not contain any indication that Dr. Puckett

performed x-rays prior to the pulpotomy, although such x-rays would normally be required.

(Doc. 73-4 at 54:9-25; Testa letter, Ex. 2, Doc. 76-2 at 9.)  Also, the chart incorrectly states that

Ms. Torres was fourteen-weeks pregnant at the time of the pulpotomy.  (Doc. 84 ¶ 9.)

Plaintiff saw Dr. Puckett eight additional times after the pulpotomy.  (Ex. 8, Pl.'s

Response, Doc. 78-8.)  In September 2009, Plaintiff had several appointments related to tooth

#18's extraction.  (*Id.*)  In April 2010, she saw Dr. Puckett with complaints about

temporomandibular joint disorder ("TMJ").  (*Id.*)  The records from these visits do not mention

tooth #12 or follow-up treatment for that tooth.

In September 2010, Ms. Torres returned to Ben Archer for pain in her teeth.  (Doc. 73 at

4.)  She was treated by Dr. Ibraheem Ackall on September 22 and 23.  (*Id.*)  The parties dispute

what Dr. Ackall told her about treatment for tooth #12.  Plaintiff signed an acknowledgment of

dental estimates and lab fees that included a line for "RCT #12," meaning that the doctor estimated the cost to perform root canal therapy on tooth #12.  (Doc. 77-10 at 95:8-96:2.) Plaintiff does not recall Dr. Ackall explaining to her the need for a root canal on tooth #12.  (Pl.'s Depo., Ex. 2, Def.'s Mot. Summ. J., Doc. 73-2 at 99:7-24.)

Five years after the pulpotomy, in June 2011, Ms. Torres started experiencing migraines and facial pain.  (Ex. 1, Pl.'s Reply, Doc. 77-1.)  She sought treatment at multiple health centers and received a slew of diagnoses.  Plaintiff first went to the Gerald Champion Regional Medical Center ("Gerald Champion") emergency room on June 4, 2011.  (*Id.*)  She was diagnosed with acute sinusitis.  (*Id.*)  Two days later, she went to Ben Archer where she was initially diagnosed with cellulitis or parotiditis and ordered to get an MRI.  (Ex. 3, Pl.'s Reply, Doc. 77-3.)  Three days later, on June 9, she returned to Gerald Champion with facial swelling that the treating physician thought was dental related.  (Ex. 4, Pl.'s Reply, Doc. 77-4.)  Later that night, Ms. Torres was transferred to the Sierra Medical Center in El Paso, held overnight, and discharged with a diagnosis of chronic sinusitis.  (Ex. 5, Pl.'s Reply, Doc. 77-5.)  Five hours later, Ms. Torres returned to Gerald Champion where she was diagnosed with cellulitis of the face.  (Ex. 6, Pl.'s Reply, Doc. 77-6.)

On June 12, 2011, Ms. Torres sought treatment at University Medical Center at El Paso for her facial cellulitis and related sinus infection.  (Doc. 84 ¶ 11.)  The surgeon noted that tooth #12 had abscessed and the infection had invaded her sinus, prompting him to remove the tooth. (Ex. 9, Pl.'s Reply, Doc. 77-9.)  According to the report for Plaintiff's follow-up with the surgeon at Texas Tech University Health Sciences, the tooth extraction eased her pain.  (Doc. 84 ¶ 11; Doc. 77-9.)  If Plaintiff had received a root canal, likely her tooth would not have abscessed and she would not have lost the tooth.  (Doc. 68 at 2.)

3

In October 2011, Plaintiff returned to Ben Archer to request her medical records.  (Doc. 73-2 at 110:2-111:17.)  Nurse Andrea Ocasio, a certified nurse practitioner at Ben Archer, told Plaintiff that if she was going to pursue legal action, she would no longer be permitted treatment at Ben Archer.  (Doc. 84 ¶ 12.)

Ben Archer is a federally-operated health care center and, by virtue of sovereign immunity, as extended, cannot be sued without the consent of the government.  (Doc. 84)  In keeping with the Federal Tort Claims Act, 28 U.S.C. § 2671, *et seq.* ("FTCA"), Plaintiff filed a Standard Form 95 with the Department of Justice claiming damages on September 10, 2012. (Ex. 6, Def.'s Mot. Summ. J. Doc. 73-6.)  On April 30, 2013, Plaintiff filed a complaint with this Court under the FTCA, alleging medical negligence, negligent abandonment per se, and a lack of informed consent.  (Compl., Doc. 1; Am. Compl., Doc. 23.)

Plaintiff moved for summary judgment on the element of causation.  (Doc. 67.)  The United States contested the motion (Def.'s Resp., Doc. 72) and subsequently moved to dismiss the complaint, or, in the alternate, moved for summary judgment on the entire claim.  (Doc. 73.) The Court now considers the three motions together.

## II.    MOTION TO DISMISS

The United States asks the Court to dismiss the action under Rule 12(b)(1) for lack of subject matter jurisdiction.  The FTCA requires exhaustion of federal remedies and the parties agree that Plaintiff complied with the federal exhaustion requirement.  28 U.S.C. § 2675(a).  The United States claims Plaintiff faced an additional exhaustion hurdle.  According to the United States, Plaintiff failed to exhaust her state law remedies and is thus barred from seeking relief in federal court.  The United States relies on two Tenth Circuit cases that required plaintiffs to follow state administrative procedures for malpractice claims because, under the FTCA, the

4

United States must be treated in the same manner as a private individual under like circumstances. *See Hill v. SmithKline Beecham Corp.*, 393 F.3d 1111, 1117 (10th Cir. 2004) (construing Colorado law); *Van Dyke v. United States*, 457 F. App'x 721, 726-27 (10th Cir. 2012) (construing Wyoming law). The United States argues that Plaintiff should have made an application to the New Mexico Medical Review Board, as required under New Mexico's Medical Malpractice Act. (Doc. 73 at 6-7.)

The United States offered no legal support for the proposition that New Mexico complainants must file their dental malpractice complaints with the Medical Review Board. By the terms of the statute, dentists are not covered by the Medical Malpractice Act. *See* N.M. Stat. Ann. § 41-5-3(A) (defining "health care provider" under the Act). The Court can find no New Mexico state court decisions regarding the application of the Medical Malpractice Act to dentists. Furthermore, New Mexico dentists are generally regulated by the New Mexico Board of Dental Health Care. *See New Mexico Bd. of Dental Health Care v. Jaime*, 296 P.3d 1261, 1263 (N.M. Ct. App. 2013). The Court determines that plaintiff was not required to file an application with the Medical Review Board and that she properly exhausted her claim. *Accord Bryant v. United States*, 126 F. Supp. 2d 1227, 1232-33 (D. Ariz. 2000) (holding that the New Mexico Medical Malpractice Act does not apply to dentists). Defendant's Motion to Dismiss is denied.

## III.   CROSS MOTIONS FOR SUMMARY JUDGMENT

The Court treats Defendant's Motion to Dismiss or, in the Alternate, Motion for Summary Judgment (Doc. 73) as a Rule 56 motion for summary judgment. In their briefing, the parties treated the Motion as one for summary judgment brought under Rule 56.

Summary judgment is appropriate only if "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A fact is "material" if it could influence the determination of the suit.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute over a material fact is "genuine" if a reasonable trier of fact could return a verdict for either party.  *Id*.  At the summary judgment stage, the Court "does not assess credibility or weigh the evidence, but simply determines whether there is a genuine factual issue for trial."  *House v. Bell*, 547 U.S. 518, 559-60 (2006).  If there is a genuine dispute of material fact, then the "facts must be viewed in the light most favorable to the nonmoving party . . . ."  *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)).  This standard does not change when the Court is presented with cross motions for summary judgment.  *See US Airways, Inc. v. O'Donnell*, 627 F.3d 1318, 1324 (10th Cir. 2010).

The parties agree that the Ben Archer employees were acting within the scope of their employment.  (Doc. 84.)  Under the FTCA, the United States is liable for the tortious conduct of its employees in the same manner and to the same extent as a private employer would be under like circumstances.  28 U.S.C. § 2674; *see also Haceesa v. United States*, 309 F.3d 722, 725 (10th Cir. 2002).  Here, the United States' liability is the same as a private dental services provider in New Mexico.  Accordingly, New Mexico law governs Plaintiff's claims for medical negligence and medical abandonment.

### A.  Medical Negligence Claim

To prove a medical malpractice claim under New Mexico law, a plaintiff needs to prove: (1) the defendant owed the plaintiff a standard of care recognized by law and the medical community; (2) the defendant breached the standard of medical care; and (3) the defendant's acts

or omissions caused the plaintiff's injuries.  *See Blauwkamp v. Univ. of New Mexico Hosp.*, 836 P.2d 1249, 1252 (N.M. 1992) (citing N.M.R.A., Unif. Jury Instructions ("U.J.I.") § 13-1101).  A defendant seeking summary judgment in a medical malpractice action must negate at least one of the elements of the plaintiff's claim.  *Id.* at 1252.  The United States moves for summary judgment on each element.

### 1. *Standard of Care*

The parties agree that Dr. Puckett performed the pulpotomy successfully.[1]  Plaintiff's claim centers on the referral and follow-up care for tooth #12.  Generally, a dentist is under the duty to apply the knowledge, skill, and care ordinarily used by reasonably well-qualified dentists.  *See* U.J.I. § 13-1101 (defining the duty of a doctor or other health care provider).  Plaintiff argues that three standards of care are in play: a doctor's duties (1) to obtain informed consent; (2) to provide necessary referrals; and (3) to follow-up on recommended care.  (Doc. 78 at 14-16.)  The Court must determine whether such duties exist as a matter of law.  *See Cottonwood Enterprises v. McAlpin*, 810 P.2d 812, 814 (N.M. 1991) (explaining that duty is a question of law for a district court to determine).

On the first standard of care, the parties agree that a doctor has a general duty to get informed consent for major procedures.  (Doc. 78 at 14; Puckett Depo., Ex. 3, Pl.'s Resp., Doc. 78-3 at 29:7-14.)  New Mexico's Administrative Code regarding dental licensing requires that a dentist inform patients about the benefits of the proposed treatment, the risks, the costs, and alternate treatments.  N.M. Admin. Code § 16.5.16 ("'Unprofessional conduct' means . . . failure to advise the patient in simple understandable terms of the proposed treatment, the anticipated

---

[1] Plaintiff contends that Dr. Puckett should have performed a pulpectomy rather than a pulpotomy.  (Doc. 78 at 14.) However, Plaintiff does not allege that these acts or omissions caused her injuries.

fee, the expectations of success, and any reasonable alternatives."). This sets the applicable standard of care.

For the second standard of care, the parties agree that under New Mexico law, Dr. Puckett had a duty to refer Ms. Torres to a specialist for the root canal. (Doc. 73 at 5-6.) In New Mexico, "[i]f a treating doctor knows, or should know, that a doctor with other qualifications is needed for the patient to receive proper treatment, it is the duty of the treating doctor to tell the patient." *See* U.J.I. § 13-1103. Thus, to keep within the standard of care, dentists have to make necessary referrals.

The parties disagree sharply on the third proposed standard of care regarding follow-up. The United States claims that the patient has the primary obligation to follow-up on referrals. (Doc. 72 at 5; Doc. 73 at 6, 21.) Plaintiff counters that "[t]he dentist has a duty to follow up and make sure the required definitive care was received by the patient." (Doc. 77 at 5.) She argues that Ben Archer's referral policy requires dental staff to contact patients and ensure that referrals are completed. (Doc. 78 at 16; Ex. 12, Doc. 77-12.) However, Ben Archer's policies do not set the legal standard of care for follow-up.

Several sources of New Mexico law suggest a dentist may have a duty to follow up. New Mexico courts discuss a physician's "duty to follow up." *See e.g.*, *Richter v. Presbyterian Healthcare Servs.*, 326 P.3d 50, 61 (N.M. Ct. App.), *cert. denied*, 326 P.3d 1111 (N.M. 2014) (finding that physicians had an "independent duty" to follow up); *Haar v. Ulwelling*, 154 P.3d 67, 74 (N.M. Ct. App. 2007) (finding a doctor owed no duty to follow up after the physician-patient relationship was terminated); *Baer v. Regents of Univ. of California*, 884 P.2d 841, 844 (N.M. Ct. App. 1994) (finding that an employer who gave regular medical examinations may have a duty to follow up). The New Mexico Administrative Code defines dental "gross

incompetence" broadly as "a significant departure from the prevailing standard of care in treating patients." N.M. Admin. Code § 16.5.16.10. Moreover, New Mexico's Dental Act creates a duty to provide on-going care. *See* U.J.I. § 13-1102 ("A doctor's duty to a patient who is in need of care continues until the doctor has withdrawn from the case. A doctor cannot abandon the patient who is in need of continuing care."); N.M. Stat. Ann. § 61-5A-21-11 (enumerating patient abandonment as a violation of dentist's duties). Accordingly, the Court finds that a dentist has a duty to provide on-going care to current patients, which may include a duty to follow up on conditions with serious medical implications.

### 2. *Breach*

To analyze breach, the factfinder must determine whether the doctor met the appropriate standard of care after hearing evidence from doctor-experts. U.J.I. § 13-1101 ("The only way in which [the factfinder] may decide whether the doctors in this case possessed and applied the knowledge and used the skill and care which the law required of [them] is from evidence presented in this trial by doctors testifying as expert witnesses."); *see also Cervantes v. Forbis*, 389 P.2d 210, 213 (N.M. 1964) ("[R]ecognized standards of medical practice in the community . . . must generally be established by expert testimony."); *Pharmaseal Labs., Inc. v. Goffe*, 568 P.2d 589 (N.M. 1977) (affirming *Cervantes* but loosening the "strict locality" rule). Because the parties and their experts dispute what constitutes a breach in the dental community, summary judgment is not appropriate on this element.

The parties dispute three key facts: (1) whether Dr. Puckett appropriately communicated the nature of the pulpotomy procedure to Ms. Torres in 2006; (2) whether Dr. Puckett appropriately communicated the need for a root canal and referral to Ms. Torres in 2006; and (3) whether Ben Archer staff appropriately followed-up on the recommended treatment from 2006 to

2011.  The Ben Archer employees claim that they fully informed Plaintiff in keeping with the standard of care.  Plaintiff claims they did not.  Ultimately, determining the facts going to breach will come down to credibility.  The United States acknowledges that the disputes will turn largely on credibility.  (Doc. 73 at 14.)  Credibility determinations are inappropriate for summary judgment.  *See House*, 547 U.S. at 559-60.

     a.   *Duty to Obtain Informed Consent*

The United States argues either Dr. Puckett obtained consent through a general release form or through undocumented, verbal consent.  (Doc. 73 at 16, 20; Doc. 73-4 at 61:10-62:16, 63:1-64:7.)  The United States points to a form that Plaintiff signed as evidence of informed consent.  (Doc. 73 at 16, 20.)  Plaintiff, however, notes that this was a general consent form that Plaintiff signed before meeting with the dentist—in other words, Plaintiff alleges that this form cannot evidence informed consent because the dentist and patient had not discussed the procedure, its risks, or alternatives.  (Doc. 78 at 7.)  Plaintiff claims that had she been fully informed about the pulpotomy procedure and subsequent root canal, she likely would have opted for an immediate tooth extraction.  (Doc. 78 at 15.)

Alternatively, the United States' claims that Dr. Puckett obtained appropriate verbal consent in a conversation at the dental chair.  (Doc. 73-4 at 61:10-62:16.)  Plaintiff remembers no such conversation.  (Doc. 73-2 at 58:9-59:6.)  The Court will not make credibility determinations at this stage.  Plaintiff raises significant factual disputes regarding consent.

     b.   *Duty to Provide Necessary Referrals*

The United States, with the support of its expert, argues that a dentist's sole duty is to write a referral to a specialist.  (Cuttrell Depo,. Ex. 3, Def.'s Mot. Summ. J., Doc. 73-3 at 101:7-102:4.)  The United States relies on the referral letter in Plaintiff's dental record as evidence that

the doctor met his standard of care for referrals.  (Doc. 73 at 13.)  Plaintiff, however, contests the adequacy of this evidence.  Plaintiff claims that she does not remember discussing the referral or receiving a written referral.  (Doc. 77-10 at 59:7-12.)  Furthermore, Plaintiff challenges the reliability of the dental record, noting that the record incorrectly states that Plaintiff was fourteen-weeks pregnant and does not contain the x-rays that Dr. Puckett swears to have taken. (Doc. 76-2 at 8.)   Again, Plaintiff has raised a genuine dispute of material fact.

     c.  *Duty to Provide On-going Care*

Although the United States' expert agrees that a dentist may have a duty to follow up on serious medical conditions, Dr. Gary Cuttrell avers that a dentist is not required to follow up on a root canal referral.  (Doc. 68-1 at 117:23-118:4; Doc. 73-3 at 128:4-25.)  The United States, through its expert, reasons that dentists cannot "force somebody to go to those appointments." (Doc. 73-3 at 147:4-10.)  Plaintiff relies on Ben Archer's referral policy for a higher standard. (Doc. 78.)  Ben Archer's policy requires dental staff to contact patients and ensure that referrals are completed.  (Ex. 12, Doc. 77-12.)  Furthermore, she questions why Dr. Puckett did not mention tooth #12 and the needed root canal in any one of the eight visits she made to him after the pulpotomy.  (Doc. 78-8.)

Making an alternate argument, the United States claims that the estimated lab fees that Plaintiff signed in 2010 are proof that Ben Archer adequately followed-up on Plaintiff's treatment.  (Doc. 77-10 at 95:8-96:2.)  Plaintiff admits that Dr. Ackall provided her with the estimated fees and that she signed the form.  (Ex. 5, Def.'s Mot. Summ. J., Doc. 73-5.) However, Plaintiff states that she does not recall discussing a root canal for tooth #12 with Dr. Ackall.  (Doc. 73-2 at 99:7-24.)  She also argues that "lay" people would not understand the

significance of "RCT #12" on the form and would not realize that she required a root canal. (Doc. 78 at 17.)

Like the other alleged breaches of care, Plaintiff raises a genuine dispute as to whether Ben Archer met its duty to provide on-going care. As such, summary judgment is inappropriate.

### 3. *Causation*

Under New Mexico Law, an act or omission is a "cause" of a plaintiff's harm if it contributes to bringing about the harm and the harm would not have occurred without it. *See* U.J.I. § 13-305. "It need not be the only explanation for the injury." *Id.* New Mexico follows the doctrine of comparative negligence and a patient's recovery can be limited due to her own negligence. U.J.I. § 13-1110.

The United States claims that because Ben Archer did not breach the standard of care, Plaintiff's claim fails on the element of causation. As explained above, the parties have a genuine material dispute concerning the breach.

Plaintiff, in her Motion for Summary Judgment, claims that summary judgment should be entered in her favor on the issue of causation because it is undisputed that "the absence of a root canal [led] to the abscess of tooth #12 and caused Plaintiff's injuries . . . ." (Doc. 67.) The parties do not dispute this fact. The United States concedes this fact repeatedly. (Doc. 72 at 7; Doc. 73 at 5, 16, 17.) The Court agrees that the absence of a root canal is the factual cause of Plaintiff's injuries.

This ruling is limited to the factual cause argued in Plaintiff's Motion for Summary Judgment. Importantly, the issue of causation is not fully resolved. Factual causation does not equate to proximate causation. Under New Mexico law, a doctor who fails in his duty to communicate is liable for harm arising from the untreated condition if a reasonably prudent

patient would have acted upon the information to avoid the harm.  U.J.I. § 13-1116B.  In this case, even if Ben Archer failed in its duty to communicate the need for a root canal, Plaintiff still must prove that she, or a reasonably prudent patient, would have acted upon the information to avoid the harm.

Additionally, the United States claims that Plaintiff was herself negligent.  (Doc. 73 at 21.)  A patient's comparative negligence can reduce her recovery under New Mexico law.  U.J.I. § 13-1110.  New Mexico's system of pure comparative negligence requires applying "several-liability/comparative fault principles unless their application would be inconsistent with public policy."  *Andrews v. Saylor*, 80 P.3d 482, 489 (N.M. Ct. App. 2003).  At this phase of the proceedings, the Court does not have the necessary information to apportion comparative fault.

## B.  Abandonment Claim

Plaintiff claims that Ben Archer abandoned her when Nurse Ocasio said she was no longer welcome at the clinic if she was contemplating legal action.  (Doc. 78 at 17-18.)  Under New Mexico Law, a "doctor's duty to a patient who is in need of care continues until the doctor has withdrawn from the case. A doctor cannot abandon the patient who is in need of continuing care. A doctor can withdraw by giving the patient reasonable notice under the circumstances."  U.J.I. § 13-1102.  Causation and injury are wrapped up in this inquiry.  In the Commentary, the Rule Committee approvingly cites to a case in which the Washington Supreme Court affirmed a directed verdict against a plaintiff's abandonment claim because the asserted abandonment "led to no delay or other detrimental result."  *Skodje v. Hardy*, 288 P.2d 471, 474 (Wash. 1955).  The court found it significant that the plaintiff was able to obtain medical care elsewhere and thus suffered no harm.

To prevail on an abandonment claim, a plaintiff has to show that the doctor abandoned (1) a patient in need of continuing care (2) without giving reasonable notice (3) leading to her injury.  Here, Plaintiff supports her abandonment claim with copious evidence about Ben Archer's policies and procedures regarding patient terminations.  (Doc. 78 at 19.)  However, as the United States argued, Plaintiff put forward no evidence that she was harmed in any way when Ben Archer terminated the dentist-patient relationship.  (Doc. 73 at 21-22.)  Plaintiff was able to secure treatment from other dentists in the area before and after her treatment at Ben Archer.  (Doc. 73:2 at 18:17-21:4; 113:9-115:18.)  Furthermore, Plaintiff herself says that she was not in immediate need of care when she visited Ben Archer in October, but rather went to the clinic seeking her dental record.  (Doc. 73-2 at 110:2-111:17.)  Given the circumstances, Ben Archer gave Plaintiff adequate notice of the termination.  The United States is entitled to summary judgment on Plaintiff's abandonment claim.

## IV.    CONCLUSION

The Plaintiff has raised genuine disputes of fact over Ben Archer's alleged medical negligence.  The parties dispute the breaches of the standard of care and causation.  Thus, Defendant's Motion for Summary Judgment is denied with respect to the claim for medical negligence.  To the extent that Plaintiff's Motion for Summary Judgment requests a finding that the absence of the root canal was a factual cause of Plaintiff's injuries, the Motion is granted.  However, the element of causation is not fully resolved with this Order.  Finally, the United States is correct in arguing that the Plaintiff has not put forth sufficient evidence to support her medical abandonment claim.

**THEREFORE**,

**IT IS ORDERED** that:

(1) Defendant's Motion to Dismiss is DENIED;

(2) Defendant's Motion for Summary Judgment is GRANTED in part and DENIED in part; and

(3) Plaintiff's Motion for Summary Judgment is GRANTED.

_____
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**